We'll hear from you when you're ready. May it please the court, I guess I'm the first one who gets to say good afternoon. Greg Fenlon, I represent Dwayne Andrews, who's the plaintiff and the appellant in this court. Mr. Andrews is not mentally ill. He's not dangerous. He does not belong in a mental institution where he still is under their control and under their regulations and under their rules. He's been there for 13 years now, and he should not be there. He should not have been there probably from the beginning, but I don't think you need to decide that in a summary judgment case. But I don't think the law on this is confusing. This is not a gray area regarding the facts of this person, this man. He had, I guess, what's a remarkable case in the fact that he had a mental condition, a once in a lifetime reaction to an alcoholic abuse situation that's never reoccurred. And according to every mental health provider that's evaluated him and seen him, it's not likely to occur in the future. Counsel, this is a substantive due process claim, right? Yes. Now, as I understand it, several of these defendants, and particularly I think Mr. Schaffer himself, have advocated for his release, and state court told them no. To what extent does that take away anything that would make this like a substantive due process claim that's shocking to conscience? You know the requirements. Well, of course, there's a dual strand on this, but with regard to the defendants, the summary judgment record's a little bit unusual in this regard. There's not a single affidavit for many of them. There is one mention of a motion, a counter motion in 2012, seven years after he had gotten there. It doesn't mention the seven years prior where they've resisted all of his efforts to be released. It doesn't say that we weren't part of that process. He says that in his deposition. But in 2012, in this cross motion, they opposed, as an adversary, his motion. And in addition to that, Judge, I think there's kind of a couple ways- I thought they supported his release, though. Tell me if I'm wrong. A conditional release. Yeah, conditional release. So if you have handcuffs and a ball and chain, you removed the ball and chain, but you still got the handcuffs. Yeah, except they were letting him out of the facility. I thought he moved to live with his sister. After a while. It took like a year and a half, I believe. You start out by saying he's still there, he's been there for all these years. Well, he's still under their control. He's still under this conditional release. His movement around his right to freedom is restricted. And it still is today. But if you have a state court process where there's an adversarial system and the state court ends up ruling one way or the other, why would the advocates on one side be liable if you disagree with the state court ruling? Well, I think the way it works and the way it worked here is you have the doctors doing the right thing. They're evaluating him. They're seeing him. They're saying we're evaluating whether he's mentally fit at this time. And they're evaluating whether he's dangerous. And they've done that throughout his history there. And then there's a committee, and all these defendants are on this committee. And what do we do with Mr. Andrews? We decide as a committee what to do with him. And the committee says we don't want to let him go yet. But at some point the committee says we want to have a conditional release, and the court still says no. Or they come up with a conditional release that says, yeah, okay, fine, but you stay exactly where you are. And I think that happens seriatim, that first the court turns him down, then two years later the court says, okay, you've got a conditional release, but you still get to live in the same facility, right, which doesn't seem like much of a release to me. But my point is the committees, you know, they eventually get to your position and they lose, right? And so isn't it a fair inference to draw that they would have lost at all stages prior to that with this judge? Judge, I think it's fair in a summary judgment record to say this, that Mr. Andrews should have been released unconditionally. Unconditionally. There's no reason for anyone to advocate that he should have these restrictions on him, especially after seven years. So if you look at this cross motion of saying, well, it uses the words conditional release, it should say unequivocally he's entitled to unconditional release. And every year this is reviewed. It's only a one-year release every year. And every year they propose the same thing. They're not willing to let him go. And the Constitution says they've got to let him go. Why isn't this an issue, though, for the state court system? Well, Judge, this is not a habeas case. This is a civil rights case. I know. And his civil rights are allowed to be prosecuted in this court, in the United States court. So I don't think I can go back. When I get involved, I can't go back and change what these state judges ruled. But we can say, look, this is a clear-cut case that he should have been released, and he should have been released unconditionally. And there's no good argument that I've seen why they should hold him. I mean, you're sick and you go to the hospital. When you're well, they release you. Well, that's maybe oversimplification, but they should have released him. There's no reason why they still have him other than to punish him. The question should be asked of the defendants, why do you still hold him, have these conditions attached to him? And what if they say because the state court said so? Well, you know, that's the state court adopted their, you know, they signed their proposed order saying these are the conditions that should apply to Mr. Andrews. So, sure, the court put their signature on it. I'm not going to say rubber stamp because that's not fair to the judge. But the Constitution trumps that, doesn't it, Judge? I mean, there has to be what the doctors are doing. The doctors are evaluating. We have a person in a mental health facility who's not mentally ill. Why is he here? What are we doing with him? Well, I thought he was mentally ill, but he's in remission. Yeah, and I think that's PTSD as I understand it. Once you have it, it's like chicken pox. Once you have chicken pox, it's in your system. You can't let it go. In his case, it's kind of unusual. Usually PTSD, we hear about people who really can't get over this. But he only really had one episode in his entire life that triggered a very bad night, an event. But according to all the doctors that have seen him, and I think there's almost a dozen, they all say the same thing. This is not likely to happen to this gentleman again. So it's kind of very unusual in that regard is that it's kind of hard to predict. It just doesn't occur that often. Somebody has this one once in a lifetime event, and it's not the typical case, let's put it that way. So, yeah, they did file a cross motion. But we're suggesting first they should never have opposed as an advocate in court his filings. They should not have opposed those. But even as late as 2012, they shouldn't have said he should only be released conditionally. I mean, that's saying, I think, saying he should not be allowed to be unconditionally released. And if I read the case law right, that's wrong. And that's actionable, that his civil rights have been deprived of him. Regardless of what the state court did, his rights have been deprived of him. And that's really what the summary judgment record, it only addresses one court action in 2012. Say, look, we're sweet and innocent. We filed this cross claim, and therefore we should not have liability. Well, I don't think that's a fair assessment of what's happened to this gentleman. And you take the record in light most favorable to him. I don't think that's a fair depiction of what's transpired here. I think, if I was in front of a jury, and one of the defendants were on the stand, you would say, why didn't you just let him go? Why not just cut him loose? I mean, I know that there's a danger in that. You don't want to be, Judge Carlton, I know in the Grass case, you mentioned that you're talking about the future decision. And you were concerned about the state having one proceeding and the federal government having another proceeding. But this is not in a gray area. Those things are not present here. So my point is that there has to be the doctor's got it right. The doctor's got it right. They're saying, look, we don't need to keep him. And they're putting that in their reports. And nobody followed it. And somebody's got to say, look, there's no reason, other than to punish Mr. Andrews, why we keep him here in this facility. So maybe I've tried to oversimplify it. But I do know that the case law is very clear that if issues are not raised or not discussed in a motion for summary judgment, it would be a reversal error to grant a summary judgment for issues that are not raised or discussed. And I also note that when they filed the motion for summary judgment, the defendants, they kind of went down this procedural due process. And we're not claiming that here. We're claiming the substantive component. And usually there's outrageous conduct, but there's also a dual strand regarding liberty. And that's the constitutional violation we're alleging occurred here. And we think that this should be remanded for trial on the merits on those issues. So if that's where we're at, as I read Carson's, it talks about there having to be a deeply rooted in the nation's history violation of a fundamental right. It's implicit in the concept of ordered liberty, which he referred to. But it also seems to at least imply that it must be of such a nature that it shocks the conscience. And if you look at the body of law of the types of cases that shock the conscience, they are truly the sort of things that anyone would look at them and they would be completely outraged by it. Is this that kind of a case? It is. Judge, you have a person in a mental institution for seven years that doesn't belong there. That's outrageous. That meets that test. I think that's a case. You know, a liberty interest regarding a person in a mental health. And in his deposition he says, look, I couldn't even go to sleep. I'm sleeping there and these people coming in and beating me in the face and assaulting me. Mr. Andrews was remarkable in his statement. So I think it is outrageous. I think if somebody is locked up in jail for seven years and they don't belong there, that's outrageous. Well, it's not much different than that. So I think we meet that. And I'll reserve my time. Very well. Ms. Walsh, we'll hear from you. May it please the Court, Counsel. In the Carstens case that Judge Erickson just mentioned, this Court found that even though civil commitment has been characterized as a significant deprivation of liberty, the United States Supreme Court has never declared that persons who pose significant danger to themselves or others possess a fundamental liberty interest in freedom from physical restraint. Prior to 2010, which is actually the date that we should be looking at here, prior to 2010, Mr. Andrews suffered from PTSD, active PTSD, and was consistently found to be angry and aggressive towards staff and patients. The reports that I've seen, I'm not really sure what Mr. Fenlon was looking at, indicated that he minimized his own symptoms. He did not believe that he had any kind of symptoms whatsoever. He blamed everybody else for all of his problems. He was not engaging in the treatment that was offered to him. He voiced that he was the innocent victim. He told them that the treatment that they were providing to him was elementary and was doing him no good. He had no respect for the therapists, and whenever he was given feedback during therapy, he would become intense and angry towards the therapists. Based on those types of reports, prior to 2010, there was a finding of mental illness and a danger to himself or others. That's the test that they had to meet. That's the test that they did meet. So for the number of petitions for release that Mr. Andrews filed prior to 2010, they were opposed. In 2010, Dr. Jeffrey Klein did a forensic examination and found that he was no longer in active PTSD, and it was in remission, and that he no longer posed a danger to himself or others. From that point forward, the Department of Mental Health filed petitions to have him conditionally released. The conditions were necessary. I know he does not believe that they were necessary, and Mr. Fenlon provides no law to say that them asking for a conditional release is somehow a violation of his constitutional rights. Well, looking at it from your perspective, what's the closest case? To? To your facts. To my facts. A case that kind of looks like this case. Well, this is an NGRI case, so most of the cases that I've seen. Missouri has a lot of NGRI. Go ahead. But most of the cases that we cited were more sex offender type cases. Yes. Go ahead. But, yes, I would say Karstens. Okay. I would say Fuqua. I would say Lewis v. City of Sacramento. But now those don't look much like the facts here, so you don't think there's a case like the facts. The facts, again, like I said, the facts are more along the, well, and I will tell you that you're going to be getting this case. But a Van Orden v. Schaefer, which is our, it's Missouri's version of Karstens, which is very similar that they wanted, that they did not believe they should have to have conditions on their release that they should be able to get out. But Karstens, in that respect, is probably the closest in this circuit. What was the reason for the conditional release as opposed to unconditional? The conditions were, well, the first time was condition without, sorry, was released without discharge. And he was still staying at. What does that even mean? That means that he's still living at what we refer to as SLPRC, St. Louis Psychiatric Rehab. So in what sense is he released? He was released. He could leave during the day, go to his job. He wasn't required to stay on the grounds. He was staying in one of those, I don't know if you've ever seen SLPRC. It has cottages out in front that are not behind a fence. He lived in a cottage. Previously he'd been confined. To the actual facility. All day. Right. So this allowed him to go work. Right, exactly. And then it was, I believe it was three to six months after that that they amended the petition and he went to live with his sister. And that was in 2012. Those petitions were in 2012. However, the first time that the Department of Mental Health filed a petition for conditional release was in 2010, not 2012. And in 2010, the department was the only person, the person representing the department was the only one putting on any evidence.  Only the department. So based on those things, I don't see how he can find that any of this conduct was egregious in any manner whatsoever, just because we don't agree with how Mr. Andrews believed he should have been released. And as time has gone by, the conditions change. And I don't know what they are currently. I kind of stopped getting the reports once we won summary judgment. But they would change. As they changed as he went through this, he was initially committed in 2005, and as he improved little bits, he moved from a very, very secure facility to a less secure facility to a very, you know, slippery, which is not as secure as any of the ones at Fulton State Hospital. The same is true with the conditional releases. As each year goes by, it's not like the same conditions are put on him. And the conditions are a lot of things like going to AA because he has had alcohol and drug problems. I'm not sure about alcohol, but he has had drug problems in the past. How many orders has the circuit court entered in this case? Through today? Yeah. And, again, I haven't kept up. I would say six since the initial one. He filed three motions in 2005-2007 that the court entered orders on. Are you counting those? No. I'm counting them. I'm sorry. When are you starting your count? I'm sorry. I thought you said how many since the conditional release. No. So from the beginning? Yeah. There's three from 2005 to 2007. There was one more, and then 2010, and then 2012. Those would be the six. I would say 11 or 12. Okay. And is he still under court supervision in effect? In effect. He reports. They make sure that he doesn't. There are certain conditions that. Does probation and parole monitor this, or does Department of Mental Health monitor the conditions? I believe the Department of Mental Health does for the NGRIs. The monitor is through the Department of Mental Health. Thank you. What was the basis for the opposition to release before 2010? The fact that he did not meet the requirements for a release, which are that he is suffering from a mental condition, that he was a danger to himself or others. He did not. Based on the psychiatric reports through both his treatment team and the forensic examinations that he would get every year, he was not meeting that standard. In what way was he not meeting it? Because he was still suffering from a mental condition and was a danger to himself or others. The argument's been advanced that PTSD is a mental condition from which one may never or can never recover. And that is, in fact, as I agree with the DSM, is a true statement. I agree with it, yes. And we have an incident where there's a single psychotic break as a result of apparently the consumption of alcohol and perhaps drugs. In combination with the PTSD. And in a controlled environment where there's no alcohol and drugs, he doesn't have those psychotic breaks. He's just lacks insight and is difficult and is resistant to the treatment modalities. And angry. And angry. Angry. I mean, he apparently had a very, even without the alcohol and drugs, he had a very bad anger management issue while he was in. And that was the concern, was that without his anger management and greater insight and some ability to maintain sobriety, he posed a risk to society and to himself. Yes. So once he did meet that test, like I said, they moved forward with having him released. And they have monitored him in the meantime. And again, the conditions are conditions to help him thrive in society as opposed to any kind of punishment to him. As you said, PTSD is something that's going to be with him the rest of his life, which means he has to keep up with therapy, with making sure that he's not, he doesn't falter on the drug issues. There's other things like keeping a job. There's a list of them and I can't remember all of them. Let me interrupt you. This is for personal liability, right? Yes. So these defendants that are named, even though many of them have been around in some years, they're still the defendants, right? They are still the defendants. Okay. Tell me who the defendants really are. I think they, when he said during, I'm sorry, when Mr. Fenlon said during his argument that all of the defendants were on a committee, I don't know where he got that. Don't go to that. Just tell me who the defendants are in this case. The defendants are all current and former employees of the department. Yeah, but can you tell me who they are? Okay. Okay. I'm going to have to remember. I'm sorry. I looked at the district court's order. It didn't help me. Of course, I could get a clerk to look at it, but do you know who your clients are? Keith Schaefer. Keith Schaefer is the former director of the Missouri Department of Mental Health. He is retired. Yes. Felix Vincennes is the current chief operating officer at SlipRick. Okay. Laurent Joie is the regional executive. She is a defendant even though she got the committee. He is. Oh, I'm sorry. He is a defendant. Sorry about that. Yes. But he is a defendant even though he got the last release. Go ahead. Yes, he is a defendant. Yeah, go ahead. He is a defendant. He is the regional executive officer. Keep going. Andy Manick was the COO at SlipRick. There was a woman whose name I don't remember who was a nurse in administration. Okay. And there was one other person who was, but they were all in administration. Okay. Thank you very much. Okay. Does that help? But I believe they really are suing the Department of Mental Health. None of these people actually had any real contact with Mr. Andrews. Except their official contact in court. Yeah. Yeah. Yeah. Mr. Javois signed off on the petitions as the regional executive officer, not as a treating physician. And also got him released. Yes. He did get him released. Yeah. As I said, none of the department's actions here were in any way egregious, nor did they in any way impugn his personal liberty interest. When it was determined that he was no longer a danger to himself and others, then they moved to have him released. The fact that the circuit court said no, they probably shouldn't have said no. I think they should have. I mean, if the only reason the circuit court said no was the prosecutors were objecting, that probably wasn't good enough. But that wasn't these defendants. They didn't do anything. Based on that, there is no constitutional violation here. And if there's no constitutional violation here, then these defendants are entitled to qualified immunity. And we would ask that this court affirm the judgment of the district court based on the findings that Judge Autry made. Thank you. Thank you, Ms. Walsh. Mr. Fenlon, you may proceed with rebuttal. Thank you. Judge, I just want to point out that in 2006, the circuit court in the city of St. Louis ordered that an independent or private evaluation of Mr. Andrews take place. And that took place four years later. It took him four years to get around to following that court order. In the meantime, in that four-year period, I believe he filed four separate requests for release. And it wasn't until 2010 when they got this independent evaluation that basically says that Mr. Andrews doesn't belong in a mental institution. That's the first time that the court took notice of that. And I think the court's opinion said that he's entitled to conditional release, but he's not entitled to conditional release at this time, which I'm not sure I know what that means. Maybe somebody else can figure that out. But there's nothing in this record from a qualified mental health professional that said this person was dangerous or he was mentally ill. In fact, he went in to the institution with a diagnosis that he was not currently mentally ill and he was not a danger. And that's the way he went in and that's the way he maintained his. I didn't understand how he could go in with that diagnosis when the week before presented a, I don't know if it was the week before, but just before that he had submitted an expert saying he was so mentally ill that he should be acquitted of this shooting. That was two years earlier, Judge. The expert says he was not competent to know his affairs in 2003. You mean the acquittal was two years after the shooting? Yes. Oh, so you're saying within the two years he regained his. We believe, and everybody supports this, every medical provider supports this, this was a one-time event in 2003. So in 2005 they evaluate him and say, that looks like the case. He's not mentally ill. Let's turn on the clock and wrap this up. Ill and so I don't believe the summary judgment record reflects it anyway that he was not dangerous. I mean that he was dangerous or that he was not mentally ill. He was not. They didn't even give him a single pill in the 13 years that he was there. I think that's circumstantial evidence of something. The only way I know you treat this is by giving him psychotropic medication. They didn't even give him individual therapy. He went to group sessions, but over time he didn't really like them because at some point he started reading the case law and started thinking, why do I belong here? And I think that would make anybody aggravated. But the fact that you're complaining about going to this group or that group doesn't mean you're dangerous. It just means that you disagree with your placement. And I don't think the two should be equated. I would ask the court to review the record in the light most favorable to Mr. Andrews and find that he was not mentally ill from 2005 on and find that he was not dangerous from that point on and decide what his constitutional rights are as a result of that. Thank you. Very well. Thank you both for your arguments. The case is submitted and the court will file an opinion in due course. That concludes the argument calendar for this morning or for the day. And the court will therefore be in recess until 9 o'clock tomorrow. Thank you.